CASE, Appellant, v. FALL RIVER COUNTY, Respondent.

(266 N. W. 728.)

(File No. 7872. Opinion filed April 24, 1936.)

*C. A. Wilson,* of Hot Springs, for Appellant.
*H. M. Lewis,* of Hot Springs, for Respondent.

CAMPBELL, J. In 1926 and 1928 Star Publishing Company, a corporation, owned and published the Hot Springs Star, a legal weekly newspaper printed and published at Hot Springs, Fall River county, S. D., and one of the duly designated official newspapers of said county. Plaintiff at that time was actively in charge of the affairs of said corporation and so continued until 1931 when he severed his connection with the corporation and took an assignment of all claims which the corporation might have against Fall River county. No question is raised as to the validity of the assignment and purely as a matter of convenience we shall speak of the situation as though the plaintiff personally had been at all times here involved the owner and publisher of the newspaper in question.

In 1926 plaintiff published in the Hot Springs Star the notice of delinquent tax sale prepared by the county treasurer, which notice contained, among other statutory requirements, "a list of the lands to be sold." Applicable law was chapter 129 Laws 1921 (amending section 6785, R. C. 1919) reading as follows: "The Treasurer shall give notice of the sale of real property by publication thereof once each week for three consecutive weeks next preceding the sale in the official newspapers of the county as designated by the Board of County Commissioners, if there be any, and if there be no newspaper published in the county, he shall give notice by written or printed notice posted at the door of the court house or building in which the Circuit Court is commonly held, or the usual place of meeting of the County Commissioners, for three weeks previous to the sale. Such notice shall contain a notification that all lands on which the taxes of the preceding year

or years remain unpaid will be sold, and the time and place of the sale and such notice must contain a list of the lands to be sold, the name of the parties to whom they are assessed, and the amount of the taxes, both real and personal, due; provided, that when any real property not exceeding twenty-five dollars in assessed value shall have been advertised in a newspaper for two successive years, and not sold, the Treasurer shall give notice of the sale of such property by posting a written notice in the manner provided when there is no newspaper published in the county, and the same shall not be advertised in a newspaper. The County Treasurer shall charge and collect, in addition to the taxes and interest and penalty, the sum of seventy-five cents ($.75) on each tract of real property and on each town lot advertised for sale, which sum shall be paid into the County Treasury, and the county shall pay the cost of publication. Each official newspaper in which any such notice is published, whether there be one, two or three such newspapers, shall receive one third of the total sum charged to the delinquent lands for advertising."

When plaintiff came to render his bill to Fall River county for the publication of these notices, precisely the same controversy arose as to the method of computing the amount plaintiff was entitled to receive for such publication that subsequently came before this court in Duster v. Gregory County (1934) 63 S. D. 20, 256 N. W. 145. It was the duty of the county treasurer to charge "* * * the sum of seventy-five cents ($.75) on each tract of real property and on each town lot advertised for sale. * * *" Plaintiff was entitled to "* * * receive one third of the total sum charged to the delinquent lands for advertising." The county maintained if there was a description of ten adjacent town lots in one block owned by the same person, as for example, "John Jones, Lots 1-10, Block 20," that it was the duty of the county treasurer to charge against the lands owned by John Jones only the sum of 75 cents for all ten of said lots. Plaintiff maintained, on the other hand, that the total charge against the lands of John Jones, under those circumstances, should be 75 cents per lot, or a total of $7.50. According to the contention of plaintiff, the county treasurer should have extended a charge of 75 cents each against 2,946 tracts of real property and town lots listed for sale as part of the

1926 notice, making a total of $2,209.50, of which plaintiff should have received one-third, or $736.50. According to the method of computation contended for by the county authorities, the treasurer should charge 75 cents each to 1825 descriptions, making a total of $1,368.75, of which plaintiff was entitled to receive one-third or $456.25, being a difference of $280.25. Plaintiff presented a bill to the county for the publication of the 1926 notice of delinquent tax sale on the basis contended for by the county in the amount of $456.25, which claim was audited, allowed, and paid, and the money was accepted and received by the plaintiff. Plaintiff says that it was agreed between himself and the county authorities that he would put in his claim at that time for what they were willing to allow and take up subsequently the matter of further allowance.

In December, 1928, plaintiff put in a bill for publishing certain commissioners' proceedings at $40.60, which proceedings included the quarterly statement of the county auditor and the county treasurer billed at the same rate as the regular commissioners' proceedings. The quarterly statement of the treasurer and auditor should have been billed as a separate item at the fixed rate of $30 as allowed by statute. In acting upon the bill it was properly reduced to $20.60 for the commissioners' proceedings, but no allowance was made for the printing of the officers' quarterly statements, whereby plaintiff was underpaid $30.

A claim made by plaintiff in December, 1928, for the publication of 282 special assessment listings in connection with the delinquent tax list at 10 cents each was entirely disallowed, whereas plaintiff, conceding that the charge of $28.20 was excessive, maintains that the claim should have been allowed for one third of that amount, or $9.40.

Plaintiff took no action with reference to any of these matters until November 9, 1932, when he filed with the county commissioners a claim for the payment of the three foregoing items of $280.25, $30, and $9.40, making a total of $319.65, less offsets in the amount of $128.84, which plaintiff conceded the county had overpaid him on various other bills, leaving the net amount of plaintiff's claim $190.81. The claim was rejected in toto, and December 6, 1932, plaintiff instituted the present action to recover thereon.

The case coming on for trial before the court without a jury, judgment was for defendant at the close of plaintiff's testimony, the motion for judgment being based on two propositions: First, that plaintiff had failed to establish his case in that it appeared that there had been a complete payment and an accord and satisfaction, and that plaintiff had waived all further claim; second, that the alleged claim was barred by the statute of limitations (which had been duly pleaded in the answer of defendant county). From the entry of this judgment and a denial of his application for new trial, plaintiff has now appealed.

■ So far as concerns the items of $30 and $9.40 (waiving any question as to failure to appeal from the action of the county commissioners on the original bills as presented), it seems clear that both of such items are barred by section 15 of the County Budget Law (chapter 79, Laws 1927, effective July 1, 1927), which provides that all claims against a county for liabilities created during the fiscal year must be filed with the county auditor before the close of business on the last day of March next succeeding after the close of the fiscal year.

■ So far as concerns the item of $280.25, in connection with the publication of notice of delinquent tax sale in 1926, we need not determine whether or not it is barred by the provisions of the County Budget Law. Appellant's claim for the publication of that notice was not, we think, divisible. It will be observed from the statute hereinbefore quoted that the thing which was to be published and which appellant was entitled to be paid for publishing was a "notice of sale." It is true that such notice was required to contain, among other things, a list of the lands to be sold, but there is no provision in the law for payment for publication of the separate items of that list. Appellant published one thing, to-wit, a notice of sale of real property for delinquent taxes. He had no interest in the amount to be charged to the realty by the treasurer except as a method of computing the publication fee that he was to receive. His fee was not divisible. If one method of computation was adopted, the amount of such fee would have been $736.50. If another method of computation was adopted, the amount of the fee would have been $456.25. Whatever the method of computation, the fee was one fee for the doing of one thing,

namely, the publishing of a notice. Appellant could not bill the county in the amount of $456.25 for the publishing of this notice and accept and receive the money and then nearly six years later come in and collect an additional fee for the publication of the same identical notice based on a different method of computation.

We are therefore of the opinion that the judgment of the learned trial court was correct as to all items involved, and such judgment is affirmed, as is also the order denying a new trial.

All the Judges concur.